**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ALTA PARTNERS, LLC

                    Plaintiff,

          -against-

FORGE GLOBAL HOLDINGS, INC.

                    Defendant.

Case No. 23-CV-2647

**AMENDED COMPLAINT**

Plaintiff Alta Partners, LLC ("Alta") files this Amended Complaint against Defendant Forge Global Holdings, Inc. ("Forge Global" or the "Company") for breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of Section 11 of the Securities Act of 1933 (the "Securities Act"), and alleges as follows:[1]

**INTRODUCTION**

1.      Alta brings this action to remedy Forge Global's numerous breaches of an agreement governing public warrants (the "Public Warrants") and misrepresentations Forge Global made about these Public Warrants. These breaches and misrepresentations damaged Alta (and similarly situated Public Warrant holders) by tens of millions of dollars while benefiting Forge Global.

2.      The Public Warrants were originally issued by a special purpose acquisition company ("SPAC") called Motive Capital Corp. II ("Motive SPAC") pursuant to a December 10,

---

[1] In accordance with the Court's Individual Practices, a redline against the original Complaint filed on March 29, 2023, ECF No. 1, is attached hereto as **Exhibit B**.

2020 warrant agreement (the "Warrant Agreement"). A true and correct copy of the Warrant Agreement is attached hereto as **Exhibit A**.

3.        On March 21, 2022, Motive SPAC and Forge Global completed a business combination (the "Business Combination") in which Motive SPAC and Forge Global merged, taking the formerly privately-owned Forge Global public, and through which Forge Global expressly assumed all obligations of the Warrant Agreement.

4.        Pursuant to the Warrant Agreement's unambiguous terms, Public Warrant holders were entitled to exercise a right to buy shares of Forge Global's common stock at a price of $11.50 per share, in the event that three conditions were met. First, 30 days must have passed since the completion of the Motive SPAC-Forge Global Business Combination. Second, the shares of common stock underlying the Public Warrants (the "Warrant Shares") must have been registered under the Securities Act, as amended, via an effective registration statement. Third, at the time of exercise, there must have been a current prospectus relating to such Warrant Shares.

5.        There can be no serious dispute that all three conditions were satisfied as of April 21, 2022. First, the Business Combination closed on March 21, 2022—30 days prior to April 20, 2022. Second, the Public Warrants and the shares of common stock underlying the Public Warrants were registered via an effective Registration Statement on Form S-4 (the "Form S-4"), which was reviewed and declared effective by the U.S. Securities and Exchange Commission (the "SEC") on February 14, 2022. Third, the Form S-4 prospectus was then current.

6.        Despite the fact that all three conditions had been met as of April 21, 2022, Forge Global improperly and unlawfully blocked Alta's repeated attempts to exercise its Public Warrants to buy Forge Global shares for $11.50 per share. And on May 19, 2022, when Alta attempted to exercise certain of its Public Warrants by submitting a Notice of Exercise—and Forge Global

refused Alta's exercise attempt in breach of the Warrant Agreement—Forge Global's stock traded at a high of $22.03.

7.      By blocking Alta's attempts to exercise its Public Warrants and purchase shares of Forge Global stock at a considerable discount to its public trading price, Forge Global caused millions of dollars of damages to Alta.

8.      On July 11, 2022, Forge Global compounded its contractual breaches by purporting to force Public Warrant holders to redeem the Public Warrants for only one cent each.

9.      Forge Global's forced redemption of the Public Warrants violated the Warrant Agreement and contradicted Forge Global's prior representations that it could redeem the Public Warrants only after Public Warrant holders enjoyed an opportunity to exercise the Public Warrants for a "significant premium."

10.     As a consequence of Forge Global's actions, Alta and other Public Warrant holders were shut out from sharing in gains from Forge Global's stock price increases.

11.     Through this Amended Complaint, Alta seeks damages and declaratory relief arising from Forge Global's refusal to exercise Alta's Public Warrants, from Forge Global's wrongful redemption of Alta's Public Warrants for only one cent each, and for materially misleading disclosures and/or omissions relating to the Public Warrants in the Form S-1 registration statement filed by Motive SPAC, which was declared effective by the SEC on December 10, 2020 (the "IPO Form S-1"), and the Form S-4.

## JURISDICTION AND VENUE

12.     Subject matter jurisdiction exists under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendant and the amount in controversy substantially exceeds $75,000. Subject matter jurisdiction also exists under 28 U.S.C. § 1331

because the complaint raises questions of federal law regarding the proper interpretation of the Securities Act and federal regulations promulgated thereunder.

13.     This Court may exercise personal jurisdiction over Defendant pursuant to 28 U.S.C.§ 1391 based on the terms of the Warrant Agreement. Section 9.3 of that Agreement provides that the parties (and their successors) "irrevocably submit[]" to the jurisdiction of "the courts of the State of New York or the United States District Court for the Southern District of New York." The courts of the State of New York or the United States District Court for the Southern District of New York have exclusive jurisdiction over "any action, proceeding or claim . . . arising out of, or relating in any way to this Agreement," and the parties "waive[] any objection to such exclusive jurisdiction and that such courts represent an inconvenient forum."

## **THE PARTIES**

14.     Plaintiff Alta is a limited liability company, which is a citizen of each state where one or more of its members is a citizen. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 60 (2d Cir. 2016). Alta has two members, Steven Cohen, who is domiciled in Puerto Rico, and Howard Cohen, who is a citizen of New York. Alta was the beneficial owner of Public Warrants of Forge Global from at least March 28, 2022 through the date of their purported redemption by Forge Global on July 11, 2022.

15.     Defendant Forge Global, a provider of marketplace infrastructure, data services, and technology, is a public company whose common stock is traded on the New York Stock Exchange ("NYSE") under the symbol FRGE. Forge Global is a Delaware corporation with its principal place of business in San Francisco, California.

## FACTS

### I.    Background on SPACs

16.    A SPAC, also known as a blank check company, is a publicly traded company that holds cash in trust for its investors and exists solely for the purpose of identifying a non-public target company to invest in, combine with, and take public. Taking a company public through a SPAC is an alternative to the traditional initial public offering ("IPO") process. This take-public transaction is usually referred to as a "de-SPAC" transaction.

17.    SPACs have grown in popularity over the last several years. The SPAC structure is considered advantageous to some private companies (primarily late-stage startups) because it allows the company to go public on a faster timeline than a traditional IPO, while avoiding some of the market volatility concerns associated with that process. The de-SPAC process is more streamlined than an IPO and permits the target board to maintain control of the combined company.

18.    The lifecycle of a SPAC begins before the SPAC's listing, when a related entity referred to as the "sponsor" provides the funding that allows the SPAC to conduct an IPO and raise capital from outside investors. The SPAC offers and sells investments called "units" to investors—typically at $10 per unit—consisting of one share of common stock and a fraction of a warrant to purchase common stock at a particular price. The funds raised by the SPAC are held in trust for the benefit of the unitholders until a merger, or business combination, occurs.

19.    Sponsors typically compensate themselves for their efforts on behalf of a SPAC with a substantial block of shares in the SPAC, called a "promote." The cost of the promote is borne by the SPAC's investors, whose shares in the SPAC may be diluted by the promote. For example, if investors purchase 20 million SPAC units for $10, and the promote consists of 20 percent of the outstanding shares, then there would be $200 million in cash for 25 million

shares, resulting in each share being valued at $8, rather than the $10 investors paid for them.[2] It is only the fractional warrants that may make up this difference.

20.    The insiders of the target company may also receive share awards as part of the de-SPAC transaction.

21.    If a SPAC fails to undertake a business combination, the sponsor returns all the funds held in trust to its investors and typically gives back its promote. Thus, to earn its promote and benefits, a sponsor may be incentivized to undertake even an ill-advised business combination that destroys value for the SPAC's other shareholders.

22.    These characteristics have led some commentators to criticize SPACs. For example, one Stanford Law professor has observed that SPAC investors tend to "experience steep post-merger losses, while SPAC sponsors profit handsomely."[3]

23.    Once a SPAC has announced a business combination and secured shareholder approval, the SPAC's shareholders may still elect to "redeem"[4] their shares in exchange for a pro rata portion of the funds held in trust by the SPAC instead of accepting shares in the post-de-SPAC public company. Redemptions reduce the amount of capital accruing to the operating entity following the de-SPAC transaction.[5] Thus, the sponsor and the SPAC's underwriters may attempt

---

[2] Michael Klausner et. al., *A Sober Look at Spacs*, 39 Yale J. on Reg. 228, 246-47 (2022).

[3] *Id.* at 229.

[4] Redemption by SPAC shareholders prior to a merger to obtain a refund of their investment is distinct from the kind of forced redemption of warrants Forge Global later engaged in.

[5] A high rate of redemption can compound the dilution of value experienced by SPAC investors who choose not to redeem. For example, if half of the original SPAC investors choose to redeem their shares, a promote that began as 20% of outstanding shares grows to 33% of the remaining shares.

to raise additional capital from other investors (*e.g.*, a private investment in public equity, or "PIPE," offering) to make up for the redeemed SPAC shares and loss of investment capital.

24.     Following a successful business combination with a target company, investors in the SPAC become shareholders of the target company. The technical mechanics of a de-SPAC transaction can take several forms. The SPAC itself may acquire the target operating company, or a new entity, referred to as a "PubCo," may be formed, into which the SPAC and the target company both merge.

25.     The sponsor and other insiders are often subject to a lock-up period following the consummation of the merger, during which time they cannot sell their shares. Therefore, the number of a post-combination entity's freely tradable shares (known as the "public float") will often be limited to shares of the surviving entity exchanged for shares held by non-redeeming SPAC shareholders as part of the merger and the warrant shares of the surviving entity, to the extent warrant holders choose to exercise their warrants after any non-exercise period—usually 30 days. The warrants remain outstanding even if a SPAC investor chooses to redeem its investment in common stock before the business combination.

26.     Where a large number of redemptions by SPAC shareholders reduces the capital that the SPAC is able to contribute to the business combination, this capital may be replaced by PIPE investment, whereby the SPAC sells additional common stock in private placement transactions to raise additional funds. These private placement transactions may fill a gap in the consideration a SPAC requires to complete a business combination. PIPE investors may receive better terms than investors in SPAC units and as a consequence, may receive a larger stake in the newly public company than SPAC investors anticipated when initially deciding whether to invest

in the SPAC. Although PIPE investments may offset differences in liquidity, PIPE investors' preferred terms may contribute to the dilution of public investors' shares.

## II.   Motive SPAC and the Public Warrants

27.    The SPAC that ultimately merged with Forge Global was Motive SPAC, sponsored by affiliates of private equity firm Motive Capital Management, LLC.

28.    On December 15, 2020, following the SEC's declaration that the IPO Form S-1 was effective, Motive SPAC raised $300 million through an IPO. Investors in Motive SPAC paid $10 per unit, with each unit consisting of one share of Motive SPAC common stock and 1/3 of a Public Warrant exercisable at $11.50 to purchase one share of Motive SPAC common stock. In total, after combining fractional Public Warrants, Motive SPAC issued 13,800,000 Public Warrants as part of its IPO.

29.    On September 13, 2021, Motive SPAC announced an agreement to merge with Forge Global.

30.    The Business Combination was structured as follows: (i) Motive SPAC, then a Cayman Islands exempted company, de-registered under Cayman Islands law and domesticated as a Delaware corporation (referred to as the "domestication"); (ii) the domesticated Motive SPAC then merged its subsidiary with and into Forge Global Inc. (Forge Global's pre-de-SPAC name as a private corporation), with Forge Global Inc. surviving the merger as a wholly owned subsidiary of Forge Global; (iii) as a consequence of the Business Combination, (a) each then-issued and outstanding Motive SPAC share automatically converted on a one-for-one basis into a share of common stock of Forge Global, and (b) each then-issued and outstanding Public Warrant automatically represented a right to acquire one share of Forge Global common stock on the terms and conditions in the Warrant Agreement.

31.     In connection with the Business Combination, Motive SPAC and Forge engaged in related offerings to generate additional investment capital. These included, among other things, a PIPE offering and a forward purchase agreement.

32.     Seeking shareholder approval for the proposed Business Combination and disclosing (or purporting to disclose) the proposed Business Combination's and related transactions' terms to shareholders, Motive SPAC filed a Form S-4 on October 7, 2021. The Form S-4, among other things, also registered with the SEC the Public Warrants and the Warrant Shares underlying the Public Warrants for which the Public Warrants could be exercised.[6]

33.     Motive SPAC amended the original Form S-4 by filing Forms S-4/A on December 17, 2021, January 19, 2022, January 31, 2022, February 10, 2022, and February 11, 2022, before the Form S-4 was declared effective on February 14, 2022.

34.     The vast majority of Motive SPAC's investors ultimately declined to participate in the Business Combination, choosing instead to redeem their shares in Motive SPAC before the Business Combination closed. Specifically, 40,638,953 shareholders elected redemption, while only 761,047 shares of Class A common stock remained in the public float, meaning approximately 98.2% of shareholders redeemed their shares.

35.     On March 21, 2022, the Business Combination closed, pursuant to which Forge Global expressly assumed the Warrant Agreement and Public Warrants, including an obligation to satisfy the Public Warrants using shares of Forge Global. Therefore, while the terms of the Warrant Agreement reference shares of Motive SPAC's common stock, subsequent to March 21, 2022, that obligation related to Forge Global stock. As a condition of closing, Motive SPAC received

---

[6] The contents and legal effect(s) of the Form S-4 registration statement are discussed in greater detail below, in Section III.

confirmation from the NYSE that Motive SPAC's common stock and Public Warrants would be approved for listing on the NYSE under new symbols reflecting their one-to-one conversion into the common stock and Public Warrants of Forge Global. The Public Warrants and Forge Global's common stock began publicly trading on the NYSE on March 22, 2022, under the symbols FRGE and FRGE.WS, respectively.

36.     Subsequently, on April 19, 2022, Forge Global filed a Form S-1 (the "Resale Form S-1") to, among other things, register for resale shares of common stock issued pursuant to the PIPE offering and forward purchase agreement. The Resale Form S-1 was ultimately declared effective on June 8, 2022.

### III.     The Terms of the Public Warrants and Registration of the Warrant Shares

37.     The Public Warrants were issued pursuant to the Warrant Agreement between Motive SPAC and Continental Stock Transfer & Trust Company, dated December 10, 2020.

38.     Pursuant to Section 4.5 of the Warrant Agreement, the terms of the Warrant Agreement were automatically modified upon the close of the Business Combination to convert the Public Warrants' issuer from Motive SPAC, which ceased to exist as a consequence of the Business Combination, to Forge Global.

39.     The terms and conditions of the Warrant Agreement were expressly incorporated into each Public Warrant certificate and are enforceable against Forge Global by each Public Warrant holder.

40.     Pursuant to Sections 3.2 and 3.3.2 of the Warrant Agreement, Forge Global's Public Warrants were exercisable upon passage of 30 days from completion of the Business Combination, provided the Warrant Shares were registered under the Securities Act and a prospectus relating to the Warrant Shares was current. The Warrant Agreement set the exercise price as $11.50.

41.     Pursuant to Section 7.4.1 of the Warrant Agreement, Forge Global was obligated to "as soon as practicable, but in no event later than fifteen (15) days after the closing of its initial Business Combination . . . use its commercially reasonable efforts to file with the [SEC] a registration statement for the registration, under the Securities Act, of the Ordinary Shares issuable upon exercise of the Warrants."

42.     Forge Global similarly agreed to use "commercially reasonable efforts to cause the same to become effective within sixty (60) Business Days after the closing of its initial Business Combination and to maintain the effectiveness of such registration statement, and a current prospectus relating thereto."

43.     SEC regulations, as well as the instructions for Form S-4, show that Form S-4 may be used to register *both* warrants and the common stock underlying those warrants for offer and sale on a delayed or continuous basis by the issuer.

44.     Specifically, 17 C.F.R. § 239.25 provides that Form S-4 may be used for offerings of securities to be issued "in a transaction of the type specified in paragraph (a) of Rule 145." Rule 145(a) covers an "offer, offer to sell, offer for sale, or sale" of securities related to a "merger or consolidation." 17 C.F.R. § 230.145(a)(2).

45.     Securities Act Rule 415, in turn, states that "securities which are to be issued in connection with business combination transactions" may be offered "on a continuous or delayed basis," which can occur after the closing of the business combination. 17 C.F.R. § 230.415(a)(1)(viii). The instructions for Form S-4 expressly incorporate these rules. *See* Rule as to Use of Form S-4, General Instructions A and H (applying Rule 145 and Rule 415 to permit use of Form S-4 to register securities issued in connection with business combination transactions on a delayed or continuous basis).

46.     In fact, the SEC's published interpretations of its rules make clear that the Warrant

Shares were *required to be* registered on the Form S-4. The SEC's longstanding position is that an

issuer is deemed to be offering, and thus must register, the securities underlying a convertible

security (*e.g.*, the shares underlying warrants) if the convertible security can be exercised within

12 months. *See* SEC Division of Corporation Finance's C&DI 139.01 (stating that if a security is

convertible or exercisable into the underlying security within one year of an offering, then the

offering of both the warrant and the underlying security is deemed to be taking place and "the

underlying securities *must be registered* at the time the offer and sale of the convertible securities

are registered") (emphasis added).

47.     The SEC recently highlighted this requirement in connection with the SPAC

business combination transaction for Li-Cycle Holdings Corp. ("Li-Cycle") (NYSE: LICY) in

which Li-Cycle sought to register shares of common stock issuable upon exercise of warrants on

its Form F-4 registration statement (the foreign-filer equivalent of Form S-4). As required by

C&DI 139.01, the SEC instructed Li-Cycle to remove a risk factor disclosure that claimed the

common stock underlying Li-Cycle's warrants was *not* being registered on the Form F-4 and that

warrant holders would be subject to risk that an effective registration statement registering the

warrant shares "may not be in place when an investor desires to exercise warrants." *See* SEC

Comment Letter to Li-Cycle Holdings Corp. Re: Registration Statement on Form F-4, dated

April 27, 2021, at 3, referencing the erroneous risk factor disclosure included in Li-Cycle's

Registration Statement on Form F-4 filed with the SEC on March 30, 2021, at 57. Li-Cycle

removed the risk factor in advance of its Form F-4 being declared effective, and, based on the

direction it received from the SEC, registered the warrant shares on the Form F-4.

48.     Indeed, John Huber, one of the principal architects of Securities Act Rule 415 and Form S-4, has offered expert testimony in another federal proceeding in which he confirms that Form S-4 "can be used to register the offer and sale of the warrants, the resale of the warrants, the exercise of the warrants for cash and the resulting issuance of the common stock upon exercise of the warrants, as well as the resale of such common stock." Expert Report of John J. Huber (cited hereafter as "Huber Rpt.," ECF No. 34-1, ¶ 12.A, *Tang Capital Partners, LP v. BRC Inc.*, 1:22-cv-03476-RWL (S.D.N.Y. Aug. 30, 2022).

49.     That Forge Global's Form S-4 registration statement registered the Warrant Shares in addition to the Public Warrants themselves is documented on the second page of the original October 7, 2021 Form S-4 registration statement. On that page, a table that tallies the fees Forge Global was required to pay for each class of securities it registered through the Form S-4 lists both the 13,800,000 "Domestication Public Warrants," and the 13,800,000 in "Domestication Common Stock underlying Domestication Public Warrants,"[7] for which Forge Global paid a $12,651.88 registration fee:

| Title of Each Class of Securities to be Registered | Amount to be Registered[1] | Proposed Maximum Offering Price Per Share | Proposed Maximum Aggregate Offering Price | Amount of Registration Fee[2] |
|---|---|---|---|---|
| Domestication Common Stock[2] | 41,400,000 | $9.89[4] | $409,446,000.00 | $37,955.64 |
| Domestication Public Warrants[2] | 13,800,000 | —[6] | | |
| Domestication Common Stock underlying Domestication Public Warrants[7] | 13,800,000 | $9.89[4] | $136,482,000.00 | $12,651.88 |
| Domestication Common Stock[8] | 150,000,000 | $9.89[4] | $1,483,500,000.00 | $137,520.45 |
| Total | 219,000,000 | | $2,029,428,000.00 | $188,127.98 |

50.     Had Forge Global intended to exclude the Warrant Shares from registration on the Form S-4 (which, according to SEC regulations it could not), it would not have paid over $12,000 in fees to register them. *See* Huber Rpt. ¶¶ 1 n.2, 12.B, 28, 35, 37. Nor would the Form S-4 have referenced the Warrant Shares as being registered pursuant to the Form S-4.

---

[7] "Domestication Common Stock" refers to the common stock of the entity surviving the Business Combination: Forge Global.

51.     The prospectus in the Form S-4 covers the offer and sale of the Public Warrants and the Warrants Shares.

52.     Further, whereas the IPO Form S-1 registration statement specifically cautioned, "We are not registering the Class A ordinary shares issuable upon exercise of the [Public Warrants] at this time," Forge Global made no such disclaimer in its Form S-4 registration statement, which explicitly purported to register the Warrant Shares.

53.     Forge Global's registration of the Warrant Shares through the Form S-4 registration statement is further confirmed by the opinion letter of Motive SPAC's lead deal counsel, Gibson, Dunn & Crutcher LLP ("Gibson"), dated February 9, 2022 (the "Exhibit 5.1 Opinion"), and attached as Exhibit 5.1 to the Form S-4. On page two of the Exhibit 5.1 Letter, Gibson wrote:

> We have acted as special legal counsel to [Motive SPAC] . . . in connection with the Registration Statement on Form S-4, initially filed with the [SEC] on October 7, 2021, as amended and supplemented through the date hereof pursuant to the Securities Act of 1933 . . . . This opinion is being rendered in connection with *the registration under the above-referenced Registration Statement of . . . (a) . . . 13,800,000 shares of Common Stock issuable upon exercise of the Warrants . . . and (b) 13,800,000 Warrants to purchase up to 13,800,000 shares of Common Stock to be issued by [Forge Global].*

(Emphasis added.)

54.     In its opinion section, Gibson further observed that, upon the consummation of the Business Combination and payment of the exercise price by the Public Warrant holders, "The shares of Common Stock issuable upon exercise of the Warrants, . . . will be duly authorized, validly issued, fully paid and non-assessable." Absent from the conditions listed for the Warrant Shares to be "duly authorized" and "validly issued" is any reference to further registration.

55.     The SEC had the opportunity to comment on the Exhibit 5.1 Opinion after it was filed as an exhibit to the February 10, 2022 Form S-4/A, but the SEC did not question or object in

any way to the representation made in the Exhibit 5.1 Opinion as to the legality of the Warrant Shares being registered on the Form S-4 for delayed or continuous offering.

56.     Despite containing nearly 40 pages of risk factors, the Form S-4 did *not* include in the prospectus or in any exhibit to the Form S-4 any disclosure that the Warrant Shares were not being registered on the Form S-4 or that holders of the Public Warrants may not be able to exercise the Public Warrants when they desire.

57.     The Form S-4 did *not* disclose that the Public Warrants would be exercisable only if the Warrant Shares were covered by an additional registration statement that would become effective, if at all, at an unknown future date.

58.     While the Form S-4 did include boilerplate references to generic risks arising from the issuer's redemption right, neither the prospectus nor any exhibit to the Form S-4 contained a warning that Forge Global might seek to redeem the Public Warrants for only one cent each without the Public Warrants having ever become exercisable by Public Warrant holders for value.

59.     In fact, the Form S-4 led an average investor to conclude that Forge Global's redemption right would arise only after the Public Warrant holders had an opportunity to exercise the Public Warrants at a profit. Forge Global expressly represented in the Form S-4 that it "established . . . the redemption criteria . . . to prevent a redemption call unless there is at the time of the call a significant premium to the [Public] [W]arrant exercise price."

60.     In short, as reflected in its IPO Form S-1, the Form S-4, and the accompanying Exhibit 5.1 Opinion, Forge Global understood and represented to the holders of Motive SPAC units and Motive SPAC shareholders who voted on the Business Combination, as well as to the investing public generally, that once the Form S-4 was declared effective by the SEC, the Warrant

Shares would be registered, and the Public Warrants would become exercisable 30 days following the close of the Business Combination.

61.     Given that the Warrant Shares were registered pursuant to the Form S-4 declared effective February 14, 2022, the only two remaining conditions for the Public Warrants to become exercisable were (i) the passage of 30 days from the Business Combination's closing and (ii) the existence of a current prospectus, which Forge Global was obligated to "use its commercially reasonable efforts" to maintain.

62.     In the Form S-4, Forge Global undertook to keep the prospectus current during any period in which offers or sales were being made and to remove from registration by means of a post-effective amendment any security registered through the Form S-4 that remained unsold at the termination of the offering.

63.     The Business Combination was completed on March 21, 2022, meaning that the 30-day waiting period expired on April 20, 2022.

64.     The prospectus included in the Form S-4 registration statement declared effective on February 14, 2022, was last supplemented by the February 14, 2022 definitive proxy statement mailed to Motive SPAC shareholders.

65.     The prospectus was current and remained current at least through June 8, 2022.

66.     Thus, the Public Warrants became exercisable no later than April 21, 2022.

## IV.     Alta Attempts to Exercise Its Public Warrants and Is Refused

67.     Despite the fact that all conditions for exercising the Public Warrants had been met as of April 21, 2022, Forge Global improperly and unlawfully repudiated its obligations under the Warrant Agreement and blocked Alta's attempt to exercise its Public Warrants to purchase Forge Global common shares for $11.50 per share, a significant discount to its public trading price.

68.     On March 30, 2022, in response to an inquiry from Alta, Forge Global wrongly represented that the Form S-4 had not registered the Warrant Shares and that the Public Warrants would not become exercisable until Forge Global filed a subsequent registration statement for the Warrant Shares. Through this communication to Alta, Forge Global repudiated its obligations under the Warrant Agreement.

69.     On April 21, 2022—the first trading day on which the Public Warrants were exercisable pursuant to the terms of the Warrant Agreement—Forge Global's shares closed at $11.70.

70.     However, because the Public Warrants' strike price was $11.50 per share, the Public Warrants were only minimally "in the money."

71.     Between April 22, 2022, and May 17, 2022, Forge Global's share price climbed to $34.77 per share (as of May 4-5, 2022), meaning the Public Warrants' $11.50 strike price was a substantial discount to the public trading price.

72.     On May 4, 2022, Alta requested confirmation that it would be able to exercise its Public Warrants, and Forge Global repeated its false representation that the Public Warrants could not be exercised until its Resale Form S-1 became effective, again repudiating its obligations under the Warrant Agreement.

73.     On or about May 19, 2022, when Forge Global shares traded as high as $22.03, Alta sent a notice of exercise for certain of its Forge Global Public Warrants pursuant to its rights under the Warrant Agreement.

74.     In response to Alta's exercise notice, Forge Global claimed, without basis and contrary to all evidence, that the Public Warrants could not be exercised because the Warrant Shares had not been registered, thereby repudiating its obligations under the Warrant Agreement.

According to Forge Global, the Public Warrants would be exercisable only upon the effectiveness of the Resale Form S-1.

**V.      As a Result of Forge Global's Repudiations of the Warrant Agreement and Refusal to Permit the Exercise of the Public Warrants, Alta and Similarly Situated Public Warrant Holders Sustained Millions of Dollars in Damages**

75.      In the weeks following Alta's initial March 28, 2022 inquiry, between April 21, 2022, when the Public Warrants became exercisable, and June 9, 2022, when Forge Global noticed that it would redeem the Public Warrants for $0.01 each, Forge Global stock rose to a high price of $34.77 in early May 2022, before falling to a $10.76 closing price on June 9, 2022, putting the Public Warrants "out of the money."

76.      By blocking Alta's attempts to exercise its Public Warrants and, thereby, precluding Alta from purchasing shares of Forge Global stock at a substantial discount to its public trading price, Forge Global caused millions of dollars of damages to Alta. Instead, by the time Forge Global permitted Alta and other Public Warrant holders to exercise their Public Warrants on June 9, 2022, it noticed redemptions of the Public Warrants for $0.01 each, resulting in the Public Warrants falling "out of the money." Forge Global purportedly redeemed the then-outstanding Public Warrants for $0.01 each on July 11, 2022.

## CAUSES OF ACTION

**COUNT I: Breach of the Warrant Agreement—Failure to Exercise the Public Warrants**

77.      Plaintiff repeats each of the foregoing allegations as if fully set forth herein.

78.      The Warrant Agreement is an enforceable contract that Forge Global expressly assumed.

79.      Alta performed its obligations under the Warrant Agreement.

80.      As of their purported redemption on July 11, 2022, Alta was the beneficial owner of 1,073,883 Public Warrants. The Public Warrants beneficially owned by Alta were extinguished

upon their purported redemption before they could be taken out of their "street name"—*i.e.*, the name of the brokerage firm that held the Public Warrants on Alta's behalf.

81.     Whether as the registered holder or beneficial holder, Alta is the only party with an interest in bringing an action for Forge Global's breaches of the Warrant Agreement with respect to the Public Warrants beneficially owned by Alta because only Alta sustained damages arising from Forge Global's breaches of the Warrant Agreement.

82.     Under Sections 3.2 and 3.3.2 of the Warrant Agreement, Forge Global's Public Warrants are exercisable upon (i) the passage of 30 days from completion of the Business Combination, (ii) the effective registration under the Securities Act of the Warrant Shares, and (iii) the existence of a current prospectus relating thereto.

83.     The Business Combination closed on March 21, 2022, and the 30-day waiting period during which Public Warrants could not be exercise expired on April 20, 2022.

84.     The Public Warrants and Warrant Shares were registered under the Securities Act pursuant to the Form S-4 that was declared effective on February 14, 2022.

85.     The prospectus included in the Form S-4 was current as of May 19, 2022 and remained current through June 8, 2022, when the Resale Form S-1 was deemed effective.

86.     Between March 28 and March 30, 2022, Alta requested that Forge Global confirm that the Public Warrants would become exercisable on April 21, 2022, as a consequence of (i) the Warrant Shares being registered pursuant to the Form S-4, (ii) the Form S-4 prospectus relating thereto being current, and (iii) 30 days having passed since the close of the Business Combination.

87.     By representing to Alta that the Public Warrants would not become exercisable until the yet-to-be-filed Resale Form S-1 would come effective, Forge Global repudiated its obligations under the Warrant Agreement.

88.     On May 4, 2022, in response to another inquiry from Alta, Forge Global again repudiated its obligations under the Warrant Agreement and falsely claimed it had no obligation to exercise the Public Warrants until the effective date of the Resale S-1.

89.     On May 19, 2022, Alta sent a notice of exercise to Forge Global seeking to exercise a portion of its substantial Public Warrant holdings in exchange for shares of Forge Global common stock.

90.     In material breach of the Warrant Agreement, Forge Global refused to honor Alta's exercise notice and repudiated its obligation to do so until the Resale Form S-1 became effective.

91.     As a direct and proximate consequence of Forge Global's material breach of the Warrant Agreement, Alta was denied the opportunity to exercise the Public Warrants, having provided Forge Global with notice of exercise while the Public Warrants were "in the money" and suffered substantial damages in an amount to be determined at trial.

**COUNT II: Breach of the Warrant Agreement (in the Alternative)—Forced Redemption**

92.     Plaintiff repeats each of the foregoing allegations as if fully set forth herein.

93.     Alta asserts this claim in the alternative, in the event that the Public Warrants were not exercisable by Alta prior to June 2022.

94.     To the extent that Forge Global is correct and the Warrant Shares were not registered pursuant to the Form S-4 and the Public Warrants were not exercisable until June 9, 2022, after the Resale Form S-1 was deemed effective, Forge Global committed a second material breach of the Warrant Agreement by purporting to redeem the Public Warrants for $0.01 each in violation of the Warrant Agreement.

95.     Under Section 6.1 of the Warrant Agreement, Forge Global was permitted to redeem the Public Warrants only if, during the exercise period, Forge Global's "Ordinary

Shares"—the Class A common shares holders of Public Warrants were entitled purchase—traded above $18 for a span of 20 out of 30 trading days, ending on the third trading day prior to the date on which notice of the redemption was given.

96.     In the Form S-4, along with the IPO Form S-1 and the Resale Form S-1, Forge Global confirmed that, to trigger Forge Global's redemption right, the 20 out of 30 trading days during which the share price needed to exceed $18 had to coincide with the Public Warrants being exercisable. For example, the Form S-4 included the following statement:

> ***Once the [Public] [W]arrants become exercisable***, [Forge Global] may redeem the outstanding [Public] [W]arrants . . . : in whole and not in part; at a price of $0.01 per warrant; upon not less than 30 days' prior written notice of redemption . . . ; if, and only if, the last reported sale price of [Forge Global's common stock] for any 20 trading days within a 30-trading day period ending three trading days before we send the notice of redemption . . . equals or exceeds $18.00 per share . . . .

(Emphasis added.)

97.     Forge Global further acknowledged that the conditions for redemption were established to ensure that holders had an opportunity to exercise the Public Warrants at a "significant premium" *before* Forge Global forced a redemption:

> We have established the last of the redemption criteria . . . to prevent a redemption call unless there is ***at the time of the call a significant premium to the [Public] [W]arrant exercise price***. . . . However, the price of the shares of [Forge Global common stock] may fall below the $18.00 redemption trigger price . . . as well as the $11.50 . . . warrant exercise price ***after the redemption notice is issued***.

(Emphasis added.)

98.     To the extent that the Public Warrants did not become exercisable until June 9, 2022, as Forge Global contends, Forge Global noticed their redemption without Forge Global common stock equaling or exceeding $18.00 per share for any 20 trading days within a 30-trading day period during which the Public Warrants were exercisable.

99.     Indeed, Forge Global noticed the redemption of the Public Warrants on the very same day Forge Global contends the Public Warrants first became exercisable—June 9, 2022.

100.    As of either June 9, 2022, the date of the redemption notice, or July 11, 2022, the date of the purported redemption, Public Warrant holders had not had an opportunity to exercise the Public Warrants at a "significant premium."

101.    By issuing a redemption notice on June 9, 2022, and purporting to redeem the Public Warrants on July 11, 2022, Forge Global materially breached the Warrant Agreement.

102.    As a direct and proximate consequence of Forge Global's material breach of the Warrant Agreement, Alta was forced to redeem its Public Warrants and suffered substantial damages in an amount to be determined at trial.

### COUNT III: Breach of Contract (in the Alternative)—Failure to Use Commercially Reasonable Efforts

103.    Plaintiff repeats each of the foregoing allegations as if fully set forth herein.

104.    Alta asserts this claim in the alternative, in the event that the Form S-4 did not register the Warrant Shares.

105.    Section 7.4.1 of the Warrant Agreement requires Forge Global to:

> ***as soon as practicable***, but in no event later than fifteen (15) Business Days after the closing of its initial Business Combination . . . ***use its commercially reasonable efforts*** to file with the [SEC] a registration statement for the registration, under the Securities Act, of the Ordinary Shares issuable upon exercise of the Warrants. . . . The Company shall ***use its commercially reasonable efforts*** to cause the same to become effective within sixty (60) Business Days following the closing of its initial Business Combination and to maintain the effectiveness of such registration statement, and a current prospectus relating thereto, until the expiration or redemption of the Warrants in accordance with the provisions of this Agreement.

(Emphasis added.)

106.    Forge Global could have registered the Warrant Shares pursuant to the Form S-4 filed and deemed effective ahead of the closing of the Business Combination on March 21, 2022.

107.    Registration of the Warrant Shares pursuant to a Form S-4 registration statement is an accepted practice for SPAC mergers, and is, in fact, required under certain conditions, including those present in the Business Combination.

108.    To the extent Forge Global failed to effectively register the Warrant Shares through the Form S-4 that became effective on February 14, 2022, Forge Global breached its obligation to use "commercially reasonable efforts" to register Warrant Shares "as soon as practicable."

109.    To the extent the Form S-4 prospectus for the Public Warrants and Warrant Shares ceased being "current" under the Warrant Agreement at any time prior to May 19, 2022, Forge Global could have, among other things, filed one or more Rule 424(b)(3) prospectus supplements to bring the prospectus current.

110.    Forge Global's failure to do so was a breach of its obligation to use commercially reasonable efforts to maintain such a current prospectus.

111.    As a direct and proximate consequence of these material breaches of the Warrant Agreement, Alta was denied the opportunity to exercise the Public Warrants while they were "in the money" and suffered substantial damages in an amount to be determined at trial.

**COUNT IV: Breach of the Implied Covenant of Good Faith and Fair Dealing**

112.    Plaintiff repeats each of the foregoing allegations as if fully set forth herein.

113.    The Warrant Agreement contains an implied covenant of good faith and fair dealing, obligating its parties to implement the Warrant Agreement as intended, and barring them from taking actions to undercut the Warrant Agreement's purpose.

114.     Forge Global breached its duty of good faith and fair dealing by taking deliberate steps to prevent Plaintiff from exercising its Public Warrants in accordance with its rights under the Warrant Agreement, including by:

a.  to the extent the Warrant Shares were not registered on the Form S-4, failing to act in good faith to register the Warrant Shares in a timely fashion;

b.  to the extent the prospectus was not current at any time prior to June 9, 2022, failing to act in good faith to keep the prospectus relating to the Warrant Shares current under the Warrant Agreement;

c.  failing to honor Alta's May 19, 2022 request to exercise its Public Warrants;

d.  repudiating its obligation to allow Alta and other holders to exercise their Public Warrants prior to the June 9, 2022 effective date of the Resale Form S-1;

e.  falsely communicating to Alta and other holders that the Public Warrants were not exercisable to deter Public Warrant holders from taking the steps necessary to exercise their Public Warrants;

f.  representing that the Warrant Agreement prevented Forge Global from redeeming the Public Warrants unless the holders had an opportunity to exercise the Public Warrants at a "significant premium" at a time when Forge Global intended to redeem the Public Warrants without affording the holders an opportunity to obtain any premium at all; and

g.  noticing and purporting to carry out redemptions of the Public Warrants even though the Warrant Agreement conditions permitting such redemptions had not been met.

115.    Forge Global's breaches of its duty of good faith and fair dealing have had the effect of destroying or injuring Plaintiff's rights to receive the fruits of the Warrant Agreement.

116.    Forge Global has acted intentionally and knowingly to deprive Plaintiff of the fruits of the Warrant Agreement.

117.    As a direct and proximate result of Forge Global's breach of the implied covenant of good faith and fair dealing, Alta has suffered substantial damages in an amount to be determined at trial.

**COUNT V: Violation of Section 11 of the Securities Act—Form S-4 Registration Statement (in the Alternative)**

118.    Plaintiff repeats each of the foregoing allegations as if fully set forth herein.

119.    Alta asserts this claim in the alternative, in the event that the Form S-4 did not register the Warrant Shares.

120.    The Form S-4 that became effective on February 14, 2022, was a registration statement filed by Forge Global.

121.    In the Form S-4, Forge Global made multiple representations that the Form S-4 would "register" the Warrant Shares upon being deemed effective.

122.    For example, the first page of the Form S-4 filed on October 7, 2021, under the section "Calculation of Registration Fee," listed "Domestication Common Stock underlying Domestication Public Warrants" among the "Title of Each Class of Securities to be Registered."

123.    Further, the "Calculation of Registration Fee" section contained the statement that Forge Global was paying $12,651.88 in registration fees for the registration of these Warrant Shares.

124.    The Exhibit 5.1 Opinion, contained the following statement:

We have acted as special legal counsel to [Motive SPAC] . . . in connection with the Registration Statement on Form S-4 initially filed with the [SEC] on October 7,

2021, as amended and supplemented through the date hereof pursuant to the Securities Act of 1933 . . . This opinion is being rendered in connection with ***the registration under the above-referenced Registration Statement of . . . 13,800,000 shares of Common Stock issuable upon exercise of the Warrants . . . and (b) 13,800,000 Warrants to purchase up to 13,800,000 shares of Common Stock to be issued by Forge Global Holdings, Inc.***

(Emphasis added.)

125.    To the extent Forge Global did not effectively register the Warrant Shares through the Form S-4, these statements were untrue statements of material fact.

126.    To the extent Forge Global did not effectively register the Warrant Shares through the Form S-4, these statements also omitted the material fact that, as it has since claimed, Forge Global did not intend to register the Warrant Shares on the Form S-4. For example, the IPO Form S-1 registration statement filed on December 8, 2020, disclosed, "We are not registering the Class A ordinary shares issuable upon exercise of the [Public Warrants] at this time." No similar disclosure was included in the Form S-4 that became effective on February 14, 2022.

127.    That Forge Global did not intend to and was not registering the Warrant Shares in the Form S-4, as Forge Global now contends, was a material fact that was required to be included in the Form S-4 and was necessary to make the above statements not misleading.

128.    The Form S-4 registration statement also contained untrue statements of material fact and omitted material facts regarding Forge Global's redemption rights under the Warrant Agreement.

129.    The Form S-4 registration statement contained the following statement:

***Once the [Public] [W]arrants become exercisable***, [Forge Global] may redeem the outstanding [Public] [W]arrants . . . : in whole and not in part; at a price of $0.01 per warrant; upon not less than 30 days' prior written notice of redemption . . . ; if, and only if, the last reported sale price of [Forge Global's common stock] for any 20 trading days within a 30-trading day period ending three trading days before

[Forge Global] send[s] the notice of redemption . . . equals or exceeds $18.00 per share . . . .

(Emphasis added.)

130.    This statement was an untrue statement of material fact because, according to Forge Global's purported reading of the Warrant Agreement and its subsequent actions, Forge Global took the position that it could issue a redemption call based on a 30-trading day period that occurred *before* the Public Warrants became exercisable.

131.    This statement similarly omitted the material fact that, according to its own purported reading of the Warrant Agreement, Forge Global could provide a notice of redemption based on price targets reached during a 30-day trading period when the Public Warrants were not exercisable. Forge Global further omitted the material fact that, upon information and belief, this was precisely what Forge Global intended to do at the time this statement was made. These material facts were required to be included in the registration statement and were necessary to make the statements not misleading.

132.    The Form S-4 registration statement also contained the following statement:

We have established the last of the redemption criteria . . . to prevent a redemption call unless there is ***at the time of the call a significant premium to the [Public] [W]arrant exercise price***. . . . However, the price of the [shares of Forge Global] may fall below the $18.00 redemption trigger price . . . as well as the $11.50 . . . warrant exercise price ***after the redemption notice is issued***.

(Emphasis added.)

133.    This statement was an untrue statement of material fact because, according to Forge Global's purported reading of the Warrant Agreement and its subsequent actions, Forge Global could issue a redemption call at a time when there was *not* a significant premium to the Public Warrants' exercise price.

134.     In fact, Forge Global issued a notice of redemption and purported to redeem the Public Warrants at a time when there was no premium at all to the Public Warrants' exercise price.

135.     This statement also omitted the material fact that, according to its own reading of the Warrant Agreement, Forge Global could time its redemption based on price targets reached during a 30-day trading period when the Public Warrants were not exercisable and thereby force Public Warrant holders to redeem their Public Warrants despite their never having an opportunity to exercise the Public Warrants at any premium. Forge Global further omitted the material fact that, upon information and belief, this was precisely what it intended to do at the time this statement was made. And it is precisely what Forge Global later purported to do.

136.     These material facts were required to be included in the registration statement and were necessary to make the statements not misleading.

137.     Alta purchased Public Warrants issued pursuant to or traceable to the Form S-4 registration statement.

138.     As a direct and proximate consequence of Forge Global's failure to register the Warrant Shares on the Form S-4, and Forge Global's purported redemption of Plaintiff's Public Warrants for $0.01 before Plaintiff had any opportunity to exercise the Public Warrants at a premium, Plaintiff suffered substantial damages in an amount to be determined at trial.

**COUNT VI: Violation of Section 11 of the Securities Act—IPO Form S-1 Registration Statement (in the Alternative)**

139.     Plaintiff repeats each of the foregoing allegations as if fully set forth herein.

140.     Alta asserts this claim in the alternative, in the event that the Form S-4 did not register the Warrant Shares, and in the event the Public Warrants purchased by Alta are not traceable to the Form S-4.

141.    The IPO Form S-1 that became effective on December 10, 2020, was a registration statement filed by Forge Global.

142.    The IPO Form S-1 registration statement contained untrue statements of material fact and omitted material facts regarding Forge Global's redemption rights under the Warrant Agreement.

143.    The IPO Form S-1 registration statement contained the following statement:

> ***Once the [Public] [W]arrants become exercisable***, [Forge Global] may redeem the outstanding [Public] [W]arrants . . . : in whole and not in part; at a price of $0.01 per warrant; upon not less than 30 days' prior written notice of redemption . . . ; if, and only if, the closing price of [Forge Global's common stock] equals or exceeds $18.00 per share . . . for any 20 trading days within a 30-trading day period ending on the third trading day prior to the date on which we send the notice of redemption . . . .

(Emphasis added.)

144.    This statement was an untrue statement of material fact because, according to Forge Global's purported reading of the Warrant Agreement and its subsequent actions, Forge Global took the position that it could issue a redemption call based on a 30-trading day period that occurred *before* the Public Warrants became exercisable.

145.    This statement similarly omitted the material fact that, according to its own purported reading of the Warrant Agreement, Forge Global could have provided a notice of redemption based on price targets reached during a 30-day trading period when the Public Warrants were not exercisable. Forge Global further omitted the material fact that, upon information and belief, this was precisely what Forge Global intended to do at the time this statement was made. These material facts were required to be included in the registration statement and were necessary to make the statements not misleading.

146.    The IPO Form S-1 registration statement also contained the following statements:

We have established the last of the redemption criteria . . . to prevent a redemption call unless there is **at the time of the call a significant premium to the [Public] [W]arrant exercise price**. . . . However, the price of the [shares of Forge Global] may fall below the $18.00 redemption trigger price . . . as well as the $11.50 . . . warrant exercise price **after the redemption notice is issued**.

(Emphasis added.)

147.    This statement was an untrue statement of material fact because, according to Forge Global's purported reading of the Warrant Agreement and its subsequent actions, Forge Global could have issued a redemption call at a time when there was *not* a significant premium to the Public Warrants' exercise price.

148.    In fact, Forge Global issued a notice of redemption and purported to redeem the Public Warrants at a time when there was no premium at all to the Public Warrants' exercise price.

149.    This statement also omitted the material fact that, according to its own reading of the Warrant Agreement, Forge Global could time its redemption based on price targets reached during a 30-day trading period when the Public Warrants were not exercisable, and thereby force Public Warrant holders to redeem their Public Warrants despite the Public Warrant holders never having an opportunity to exercise the Public Warrants at any premium. Forge Global further omitted the material fact that, upon information and belief, this was precisely what it intended to do at the time this statement was made. And it is precisely what Forge Global later purported to do.

150.    These material facts were required to be included in the registration statement and were necessary to make the statements not misleading.

151.    Alta reasonably relied on Forge Global's material misrepresentations and omissions regarding Forge Global's redemption rights under the Warrant Agreement. This is because, *inter alia*: the IPO Form S-1 represented that (i) Forge Global's redemption rights were triggered based on price targets reached during a 30-day trading period when the Public Warrants

were exercisable, and (ii) Forge Global could have issued a redemption call only at a time when there was a significant premium to the Public Warrants' exercise price.

152. Alta purchased Public Warrants issued pursuant to or traceable to the IPO Form S-1 registration statement.

153. As a direct and proximate consequence of Forge Global's purported redemption of Plaintiff's Public Warrants for $0.01 before Plaintiff had any opportunity to exercise the Public Warrants at a premium, Plaintiff suffered substantial damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully request that this Court enter judgment in Plaintiff's favor and against Defendant as follows:

A. Awarding general and compensatory damages to Alta in an amount to be determined at trial;

B. Awarding Alta costs and disbursements, including attorney's fees, related to this dispute; and

C. Granting such other and further relief as the Court deems just and proper.

**<u>JURY DEMAND</u>**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury on all issues that are so triable.


Dated: June 21, 2023
       New York, New York

                                 SHER TREMONTE LLP

                                 By:  */s/ Justin M. Sher*
                                    Justin M. Sher
                                    Max Tanner
                               90 Broad Street, 23rd Floor
                               New York, New York 10004
                               Tel: 212.202.2600
                               jsher@shertremonte.com
                               mtanner@shertremonte.com

                               *Attorneys for Plaintiff Alta Partners, LLC*

32