```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
ALTA PARTNERS, LLC,                                               :
                                                                  :
                              Plaintiff,                          :
                                                                  :      23-CV-2647 (JMF)
                -v-                                               :
                                                                  :     OPINION AND ORDER
FORGE GLOBAL HOLDINGS, INC.,                                      :
                                                                  :
                              Defendant.                          :
                                                                  :
------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

Plaintiff Alta Partners, LLC ("Alta") brings claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and federal securities fraud against Forge Global Holdings, Inc. ("Forge") in connection with public warrants issued by the special purpose acquisition company or "SPAC" that ultimately merged with Forge. Alta alleges that Forge violated the agreement governing the warrants (the "Warrant Agreement") by improperly preventing Alta from exercising its warrants and then redeeming the outstanding warrants at a nominal price. In the alternative, Alta brings claims pursuant to Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k. Forge now moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for partial dismissal. ECF No. 22. For the reasons that follow, Forge's motion is GRANTED in part and DENIED in part.

## BACKGROUND

The following facts are taken from the Amended Complaint, ECF No. 21 ("Compl."); documents referenced or attached thereto, including the Warrant Agreement, ECF No. 21-1 ("Warrant Agmt."); and documents of which the Court may take judicial notice, such as filings with the United States Securities and Exchange Commission ("SEC"). *See, e.g., Tang Cap.*

*Partners, LP v. BRC Inc.*, No. 22-CV-3476 (RWL), 2023 WL 2396635, at *5 (S.D.N.Y. Mar. 8, 2023); *Hensley v. IEC Elecs. Corp.*, No. 13-CV-4507 (JMF), 2014 WL 4473373, at *1 (S.D.N.Y. Sept. 11, 2014). The allegations in the Amended Complaint are assumed to be true for purposes of this motion and construed in the light most favorable to Alta. *See, e.g.*, *Kleinman v. Elan Corp., PLC*, 706 F.3d 145, 152 (2d Cir. 2013).

**A. SPACs and Forge**

A SPAC is a publicly traded company that exists solely for the purpose of identifying a non-public company to invest in, combine with, and take public through what is known as a "de-SPAC" transaction. Compl. ¶ 16. SPACs raise capital from investors by offering "units" consisting of one share of common stock and a fraction of a warrant to purchase common stock at a particular price. *Id.* ¶ 18. The funds raised are held in trust for the benefit of the unitholders until a merger, or business combination, occurs. *Id.* Once the SPAC's shareholders have approved a business combination, the shareholders may redeem their shares in exchange for a pro rata portion of the funds held in trust by the SPAC instead of accepting shares in the post-de-SPAC public company, although warrants remain outstanding even if a SPAC investor chooses to redeem its investment before the combination. *Id.* ¶¶ 23, 25. Following a successful business combination, investors in the SPAC become shareholders of the target company. *Id.* ¶ 24.

Motive SPAC, the SPAC that ultimately merged with Forge, raised $300 million through a December 15, 2020 initial public offering ("IPO") following a declaration by the Securities and Exchange Commission ("SEC") that the IPO Form S-1 was effective. *Id.* ¶¶ 27-28. Investors paid $10 per unit, with each unit consisting of one share of Motive SPAC common stock and one-third of a Public Warrant exercisable at $11.50 to purchase one share of Motive SPAC common stock. *Id.* ¶ 28. In total, through its IPO, Motive issued nearly fourteen million Public

Warrants. *Id.* In September 2021, Motive SPAC announced an agreement to merge with Forge, and the business combination ultimately closed on March 21, 2022. *Id.* ¶¶ 29, 35. To the extent relevant here, the business combination converted each outstanding Motive SPAC share on a one-for-one basis into a share of Forge common stock; each then-issued and outstanding Public Warrant automatically represented a right to acquire one share of Forge common stock on the terms and conditions in the Warrant Agreement. *Id.* ¶ 30.

**B. The Warrant Agreement and Registration Statements**

The Public Warrants were issued pursuant to the Warrant Agreement, the terms and conditions of which were expressly incorporated into each Public Warrant certificate and are enforceable against Forge by each Public Warrant holder. *Id.* ¶¶ 37, 39. Pursuant to the Warrant Agreement — which is subject to New York law, *see* Warrant Agmt. § 9.3 — the Public Warrants were exercisable at a price of $11.50 after thirty days had elapsed from the completion of the business combination, provided that "a registration statement under the Securities Act with respect to the Ordinary Shares underlying the Public Warrants is then effective and a prospectus relating thereto is current." Warrant Agmt. § 3.3.2; *see id.* § 3.2; Compl. ¶ 40. Of particular significance here, the Agreement also provided that Forge had the option to "redeem all (and not part) of the outstanding Warrants . . . at any time during the Exercise Period, . . . upon notice to the Registered Holders of the Warrants, . . . at a Redemption Price . . . of $0.01 per Warrant, *provided* that (a) the Reference Value equals or exceeds $18.00 per share . . . and (b) there is an effective registration statement covering the issuance of the Ordinary Shares issuable upon exercise of the Warrants, and a current prospectus relating thereto, available throughout the 30-day Redemption Period." Warrant Agmt. § 6.1. The "Reference Value" was defined, in turn, as "the last reported sales price of the Ordinary Shares for any twenty (20) trading days within the

3

thirty (30) trading-day period ending on the third trading day prior to the date on which notice of the redemption is given." *Id.* § 6.3.  The "30-day Redemption Period" refers to the window of time between when notice of redemption is issued to Public Warrant holders and the date of redemption, during which holders may exercise their Warrants.  *See id.* §§ 6.2-6.3.

   Forge was obligated, "as soon as practicable, but in no event later than fifteen (15) days after the closing of its initial Business Combination" to "use its commercially reasonable efforts to file with the [SEC] a registration statement for the registration, under the Securities Act, of the Ordinary Shares issuable upon exercise of the Warrants," and to use "commercially reasonable efforts to cause the same to become effective within sixty (60) Business Days after the closing of its initial Business Combination and to maintain the effectiveness of such registration statement, and a current prospectus relating thereto."  Compl. ¶¶ 41-42 (quoting Warrant Agmt. § 7.4.1). On October 7, 2021, Motive SPAC filed a Form S-4 with the SEC as part of its process of seeking shareholder approval for the proposed business combination and disclosing the proposed business combination's and related transactions' terms to shareholders.  *Id.* ¶ 32.  The Form S-4 registration statement represents that it registered both 13,800,000 "Domestication Public Warrants" as well as 13,800,000 in "Domestication Common Stock underlying Domestication Public Warrants"; and that Forge paid $12,651.88 in fees to register the latter category of securities.  *Id.* ¶¶ 49-50.  Motive SPAC amended the Form S-4 five times between its initial filing and February 11, 2022; the SEC declared the Form S-4 effective on February 14, 2022. *Id.* ¶ 33.  The prospectus included in the Form S-4 covers the offer and sale of the Public Warrants and the Warrants Shares; it was current and remained current from the time the Form S-4 was declared effective on February 14, 2022, through at least June 8, 2022.  *Id.* ¶¶ 51, 64-65. On April, 19, 2022, nearly a month after the business combination closed on March 21, 2022,

Forge filed a Form S-1 to, among other things, register certain shares of common stock for resale. *Id.* ¶ 36. The SEC declared that Form S-1 effective on June 8, 2022. *Id.*

**C. Alta's Attempts to Exercise the Warrants and Forge's Redemption**

Alta purchased Public Warrants "issued pursuant to or traceable to the Form S-4 registration statement." *Id.* ¶ 137. Following its purchase, Alta asked Forge to confirm that the Public Warrants would be exercisable pursuant to the Warrant Agreement as of April 21, 2022, on the theory that it was more than thirty days after completion of the business combination on March 21, 2022. *Id.* ¶¶ 63-66. Forge responded that the Form S-4 had not registered the Warrant Shares and that the Public Warrants would not become exercisable until the Warrant Shares were registered. *Id.* ¶ 68. On May 4, 2022, Alta again requested confirmation that it would be able to exercise its Public Warrants; again, it was told that the Public Warrants could not be exercised until Forge's then-recently-filed Form S-1 became effective. *Id.* ¶ 72. Later that month, Alta sent a notice of exercise for certain of its Public Warrants; yet again, Forge responded that the Warrants could not be exercised because the Warrant Shares had not yet been registered. *Id.* ¶¶ 73-74. Between April 22, 2022, and May 17, 2022, Forge's share price climbed well above the $11.50 strike price, reaching as high as $34.77 per share. *Id.* ¶ 71. At the time when Alta sent its exercise notice, shares were trading as high as $22.03. *Id.* ¶ 73.

By June 8, 2022, when the later-filed Form S-1 was declared effective, share prices had fallen. On June 9, 2022, Forge noticed redemptions of the Public Warrants for $0.01 apiece pursuant to Section 6.3 of the Warrant Agreement. *Id.* ¶ 75. The closing price of Forge's common stock on that date was only $10.76, *see id.*, and remained "out of the money" through July 11, 2022, when Forge redeemed the then-outstanding Public Warrants for $0.01 apiece, *id.* ¶ 76. As a result, Alta and the other Public Warrant holders never had an opportunity to exercise

5

the Public Warrants when they were "in the money" (i.e., when the stock was trading at or above the exercise price), let alone at a significant premium. *E.g.*, *id.* ¶ 91.

### D. Alta's Claims

The Amended Complaint contains six claims:

- Count I alleges that Forge breached the Warrant Agreement by "blocking Alta's attempts to exercise its Public Warrants" in the period following April 21, 2022, when the Public Warrants were "in the money." *Id.* ¶¶ 76-91.

- Count II alleges that, "[t]o the extent that Forge [] is correct and the Warrant Shares were not registered pursuant to the Form S-4 and the Public Warrants were not exercisable until June 9, 2022," Forge breached the Warrant Agreement by forcing redemption before all required conditions were met. *Id.* ¶¶ 92-102.

- Count III alleges that, again to the extent that the Warrant Shares were not registered pursuant to the Form S-4, Forge breached the Warrant Agreement by failing "to use 'commercially reasonable efforts' to register Warrant Shares 'as soon as practicable.'" *Id.* ¶¶ 103-11.

- Count IV alleges that Forge breached the implied covenant of good faith and fair dealing by "taking deliberate steps to prevent [Alta] from exercising its Public Warrants in accordance with its rights under the Warrant Agreement." *Id.* ¶¶ 112-17.

- Count V alleges that, to the extent that the Warrant Shares were not registered pursuant to the Form S-4, Forge violated Section 11 of the Securities Act by making false or misleading statements in the Form S-4 by representing that the Shares *were* being effectively registered. *Id.* ¶¶ 118-38.

- Count VI alleges that Forge violated Section 11 of the Securities Act by making false or misleading statements in the Form S-1 that would lead a reasonable investor into believing that Forge could force redemption only "at a time when there was a significant premium to the Public Warrants' exercise price." *Id.* ¶¶ 139-53.

Forge moves to dismiss only four of the claims, Counts II, IV, V, and VI. *See* ECF No. 23 ("Def.'s Mem."), at 1, 9.

## LEGAL STANDARDS

In evaluating a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all facts set forth in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See,*

6

*e.g.*, *Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018); *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008). A plaintiff's claims will survive a motion to dismiss, however, only if it alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Thus, a plaintiff must show "more than a sheer possibility that [the defendant] has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555. If a plaintiff's pleadings "have not nudged [its] claims across the line from conceivable to plausible, [those claims] must be dismissed." *Id.* at 570.

## DISCUSSION

As noted, Forge moves to dismiss Alta's claims for breach of contract based on Forge's redemption of the Public Warrants for $0.01 each (Count II), for breach of the implied covenant of good faith and fair dealing (Count III), and for violations of Section 11 of the Securities Act (Counts V and VI). The Court will consider each of its arguments in turn.

**A. Count II: Breach of Warrant Agreement – Forced Redemption**

To establish a claim for breach of contract under New York law, which applies here, "a plaintiff must show (1) the existence of an agreement, (2) adequate performance of the contract by the claimant, (3) breach of contract by the accused, and (4) damages." *Stadt v. Fox News Network LLC*, 719 F. Supp. 2d 312, 318 (S.D.N.Y. 2010) (cleaned up). A written contract must be interpreted according to the parties' intent, which is "derived from the plain meaning of the language employed in the agreements." *In re Lehman Bros. Inc.*, 478 B.R. 570, 585-86

(S.D.N.Y. 2012) (internal quotation marks omitted).  In a dispute over the meaning of a contract, the "threshold question . . . is whether the contract terms are ambiguous," *see, e.g.*, *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000), which is a question of law for the Court to decide, *see, e.g.*, *Broder*, 418 F.3d at 197; *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 178 (2d Cir. 2004).  A contract is unambiguous when it has "a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion." *Olin Corp. v. Am. Home Assurance Co.*, 704 F.3d 89, 99 (2d Cir. 2012) (quoting *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989)).  In such circumstances, a court may dismiss a breach of contract claim on a Rule 12(b)(6) motion to dismiss.  *See, e.g.*, *Advanced Mktg. Grp., Inc. v. Bus. Payment Sys., LLC*, 300 F. App'x 48, 49 (2d Cir. 2008).

Applying these standards here, the Court concludes that Alta's contract claim in Count II fails as a matter of law.  Alta contends that Forge breached the Warrant Agreement by redeeming the Public Warrants when not all required conditions were met — specifically, without an overlap between the thirty-day trading period on which the Reference Price is based and the exercise period.  Compl. ¶¶ 94-98; *see* ECF No. 26 ("Pl's Opp'n"), at 8-10.  But, as Judge Rakoff recently held in nearly identical circumstances (involving Alta and Alta's counsel here, no less), "[t]hat position finds no support in the unambiguous terms of the contract, which includes no requirement that the thirty-day lookback period for [Forge's] share price begin only after the warrants are exercisable.  All that is required is that the warrants be exercisable at the time of the redemption notice, which they were." *Alta Partners, LLC v. Getty Images Holdings,*

8

*Inc.*, No. 22-CV-8916 (JSR), 2023 WL 7095975, at *10 (S.D.N.Y. Oct. 26, 2023).[1] Put differently, under the plain terms of Section 6.1 of the Warrant Agreement, Forge could redeem the Public Warrants for $0.01 "at any time" as long as the following conditions were met: (1) the shares were exercisable; (2) the "Reference Value" (based on the "trading-day period ending on the third trading day *prior to* the date on which notice of the redemption is given") exceeded $18.00 per share; and (3) an effective registration statement and current prospectus were in place for the underlying shares for the thirty days prior to redemption. Warrant Agmt. §§ 6.1, 6.3 (emphasis added). These conditions were met, so Alta's claim of breach in Count II fails as a matter of law.

Alta's arguments to the contrary are based on stringing together disparate fragments of contractual language, *see* Pl's Opp'n 8-10, but these arguments are belied by the plain and complete text of the Warrant Agreement itself. The language "during the Exercise period" in Section 6.1 qualifies only when Forge may exercise its redemption right. That language does not modify the conditions for redemption that come later in the Section, which are set off by the words "*provided* that . . . ." Warrant Agmt. § 6.1. Alta's argument is also belied by Section 6.3 of the Warrant Agreement, which defines "Reference Value" as "the last reported sales price of the Ordinary Shares for any twenty (20) trading days within the thirty (30) trading-day period ending on the third trading day *prior to* the date on which notice of the redemption is given." *Id.* § 6.3 (emphasis added). That is plainly a different period from the "30-day Redemption Period" and the "Exercise Period," both of which, by definition, post-date the giving of a notice of

---

[1] Judge Rakoff granted summary judgment *to* Alta on its claim that the company in that case had breached the warrant agreement by refusing to allow Alta to exercise its warrants thirty days after the de-SPAC business combination. *See* 2023 WL 7095975, at *4-9. That claim is similar to Count I here — which, as noted, Forge does not move to dismiss.

redemption.  Finally, Alta's argument that "the definition of 'Ordinary Shares' incorporated in the Reference Value" means that the Reference Value may only be based on the price of "the Warrant Shares that are trading on the market — those that were previously issued upon exercise by holders of Warrants," Pl.'s Opp'n 9, also finds no support in the Agreement's plain text.  "Ordinary Share" is defined as "one Class A ordinary share of the Company, par value $0.0001 per share."  Warrant Agmt. 1; *see also* ECF No. 28 ("Def.'s Reply"), at 2.

       That leaves only Alta's contention that Forge represented in its registration forms "that a redemption would not occur unless holders of Warrants had an opportunity 'at the time of the call' to exercise them at a 'significant premium'" and that the Warrant Agreement should be interpreted in light of that representation.  Pl.'s Opp'n 9-10.  But where the relevant contract terms are unambiguous, as is the case here, extrinsic evidence of purpose or meaning may not be considered.  *See, e.g.*, *Alta Partners*, 2023 WL 7095975, at *10 (rejecting an identical argument to the one Alta presses here, explaining that "[t]here is no basis for Alta's argument that statements [the company] made about its motivation for agreeing to a certain contract term, made more than a year after the contract was formed, can supersede the plain terms of the contract itself"); *Barshay v. Naithani*, No. 20-CV-8579 (KPF), 2023 WL 2051170, at *7 (S.D.N.Y. Feb. 16, 2023) ("Where a contract is clear and unambiguous on its face, the intent of the parties must be gleaned from within the four corners of the instrument, and not from extrinsic evidence." (quoting *RJE Corp. v. Northville Indus. Corp.*, 329 F.3d 310, 314 (2d Cir. 2003)).  Accordingly, Alta's breach claim alleged in Count II must be and is dismissed.

**B. Count IV: Breach of Implied Covenant of Good Faith and Fair Dealing**

       Next, Forge moves to dismiss Alta's claim for breach of the covenant of good faith and fair dealing.  The covenant, which is implied in all contracts, requires that "neither party to a

contract shall do anything that has the effect of destroying or injuring the right of the other party to receive the fruits of the contract, or to violate the party's presumed intentions or reasonable expectations." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 205 (2d Cir. 2018) (cleaned up); *see also Cordero v. Transamerica Annuity Serv. Corp.*, 190 N.Y.S.3d 274, 281-82 (2023). Thus, "conduct that while technically not constituting a breach of contract, nevertheless deprives the plaintiff of the benefit of its bargain" can constitute a breach of the implied covenant. *VR Optics, LLC v. Peloton Interactive, Inc.*, No. 16-CV-6392 (JPO), 2017 WL 3600427, at *4 (S.D.N.Y. Aug. 18, 2017). But an implied-covenant claim "cannot 'be used to add contract terms not bargained for.'" *Alta Partners*, 2023 WL 7095975, at *10 (quoting *Trustpilot Damages LLC v. Trustpilot, Inc.*, No. 21-CV-432 (JSR), 2021 WL 2667029, at *9 (S.D.N.Y. June 29, 2021)). Additionally, "[a]n implied-covenant claim can survive a motion to dismiss only if it is based on allegations different than those underlying the accompanying breach of contract claim and the relief sought is not intrinsically tied to the damages allegedly resulting from the breach of contract." *Grant & Eisenhofer, P.A. v. Bernstein Liebhard LLP*, No. 14-CV-9839 (JMF), 2015 WL 1809001, at *4 (S.D.N.Y. Apr. 20, 2015) (internal quotation marks omitted); *see also Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 175 F. Supp. 3d 44, 63 (S.D.N.Y. 2016).

In light of these standards, Alta's implied-covenant claim fails for two reasons. First, "[a] breach of implied covenant claim cannot be based on conduct permitted under the contract." *Golden Unicorn Enters., Inc. v. Audible, Inc.*, No. 21-CV-7059 (JMF), 2023 WL 4561718, at *9 (S.D.N.Y. July 17, 2023); *accord Gaia House Mezz LLC v. State St. Bank & Tr. Co.*, 720 F.3d 84, 93 (2d Cir. 2013). Thus, to the extent that Alta's implied-covenant claim is based on Forge's redemption of the Public Warrants pursuant to Section 6.1, its claim fails for the reasons discussed above. *See Alta Partners*, 2023 WL 7095975, at *10 (reaching the same conclusion).

11

That is, to apply the implied covenant would improperly "negate" the parties' "expressly bargained-for" agreement.  *S. Telecom Inc. v. ThreeSixty Brands Grp., LLC*, 520 F. Supp. 3d 497, 507 (S.D.N.Y. 2021).  Second, and in any event, Alta's implied-covenant claim is based on the same allegations as its breach-of-contract claims and seeks relief that is "intrinsically tied to the damages allegedly resulting from the breach of contract."  *Grant & Eisenhofer*, 2015 WL 1809001, at *4; *see* Compl. ¶¶ 112-17; *see also, e.g.*, *Croft v. AXA Equitable Life Ins. Co.*, No. 17-CV-9355 (JMF), 2018 WL 4007646, at *3 (S.D.N.Y. Aug. 22, 2018) (dismissing the plaintiffs' implied covenant claim because it depended on the "exact same set of facts as their breach-of-contract claim"); *Alaska Elec. Pension Fund*, 175 F. Supp. 3d at 63 (same).  Accordingly, Alta's implied-covenant claim in Count IV must be and is dismissed as well.

### C.  Counts V and VI: Violations of Section 11 of the Securities Act

Finally, Forge moves to dismiss Alta's two claims, pleaded "in the alternative," under Section 11 of the Securities Act.  Section 11(a) provides that any signatory to a registration statement, director of the issuer, or underwriter may be held liable to purchasers of registered securities if the registration statement contains "an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading."  15 U.S.C. § 77k(a); *see Tongue v. Sanofi*, 816 F.3d 199, 209 (2d Cir. 2016).  Alta's claim in Count V pertains to statements in the Form S-4, *see* Compl. ¶¶ 118-38; *see also* ECF No. 24-1 ("Form S-4"), and its claim in Count VI pertains to statements in the IPO Form S-1, *see* Compl. ¶¶ 139-53; *see also* ECF No. 24-3 ("IPO Form S-1").

Alta presses three theories of securities fraud, two of which apply to both the Form S-4 and IPO S-1 and one of which applies only to the Form S-4.  Taking them out of order, Alta first claims — in both Counts — that Forge's Form S-4 and IPO Form S-1 were misleading because

Forge "omitted the material fact that, according to its own purported reading of the Warrant Agreement, Forge Global could provide a notice of redemption based on price targets reached during a 30-day trading period when the Public Warrants were not exercisable."  Compl. ¶ 131; *accord id.* ¶ 144.  In light of the Court's holding with respect to Count II above, however, that claim fails as a matter of law.  That is, the Warrant Agreement's plain terms foreclose Alta's contention that the trading period on which the Reference Value was based had to overlap with the time in which the Warrants are exercisable.  It follows that a reasonable investor could not have been misled in the manner Alta suggests.

Second, Alta contends — also in both Counts — that the Form S-4 and IPO Form S-1 falsely stated that Forge had established the Reference Value requirement "to prevent a redemption call unless there is at the time of the call a significant premium to the [Public] [W]arrant exercise price."  Compl. ¶ 132 (emphasis omitted); *accord id.* ¶ 146.  "This statement," the Amended Complaint alleges, "was an untrue statement of material fact because, according to Forge Global's purported reading of the Warrant Agreement and its subsequent actions, Forge Global could issue a redemption call at the time when there was *not* a significant premium to the Public Warrants' exercise price."  *Id.* ¶ 133; *accord id.* ¶ 147.  Putting aside the fact that the Warrant Agreement itself revealed that Forge could redeem the Public Warrants for a nominal price, the problem with this claim is that Forge "expressly disclosed" in the two Forms "precisely what Plaintiff[] claim[s] it was trying to hide."  *City of Coral Springs Police Officers' Ret. Plan v. Farfetch Ltd.*, 565 F. Supp. 3d 478, 493 (S.D.N.Y. 2021) (dismissing a Section 11 claim).  Specifically, the Forms stated, in relevant part, as follows:

> Following the Business Combination, New Forge may redeem the Domestication Public Warrants prior to their exercise at a time that is disadvantageous to the holder, thereby significantly impairing the value of such warrants. . . . Redemption of the outstanding Domestication Public Warrants could force the

13

> holders of Domestication Public Warrants (i) to exercise their Domestication Public Warrants and pay the exercise price therefore at a time when it may be disadvantageous for such holders to do so, (ii) to sell their Domestication Public Warrants at the then-current market price when they might otherwise wish to hold their Domestication Public Warrants, or (iii) to accept the nominal redemption price which, at the time the outstanding Domestication Public Warrants are called for redemption, is likely to be substantially less than the market value of the Domestication Public Warrants.

Form S-4 A006-007; *see* IPO Form S-1 A024-025; *see also* Def.'s Mem. 22-23; Def.'s Reply 6-7. In other words, the Forms contained specific cautionary language warning of "the exact risk that later materialized." *Yaroni v. Pintec Tech. Holdings Ltd.*, 600 F. Supp. 3d 385, 396 (S.D.N.Y. 2022). It follows that "no reasonable investor could possibly have been misled in [the] manner" that Alta alleges. *City of Coral Springs Police Officers' Ret. Plan*, 565 F. Supp. 3d at 493.

By contrast, Alta's final theory of securities fraud — which is only in Count V — cannot be dismissed at this stage. Alta alleges that Forge "made multiple representations that the Form S-4 would 'register' the Warrant Shares upon being deemed effective." Compl. ¶ 121. Specifically, Form S-4 included the 13,800,000 shares of "Domestication Common Stock underlying Domestication Public Warrants" in the list of securities being registered through the form and stated that Forge "was paying $12,651.88 in registration fees for the registration of these Warrant Shares." *Id.* ¶¶ 122-24; *see* Form S-4 A002. Alta alleges that, "[t]o the extent Forge Global did not effectively register the Warrant Shares through the Form S-4, these statements were untrue statements of material fact" and "omitted the material fact that, as it has since claimed, Forge Global did not intend to register the Warrant Shares on the Form S-4." Compl. ¶¶ 125-26. Forge counters that these statements were not false or misleading because the Form S-4 *did* in fact register the shares and that such registration was merely not "legally sufficient to permit exercise two months later." Def.'s Reply 7-8. But assuming that Alta's

14

principal theory of breach, set forth in Count I, fails, its allegations are sufficient to permit a plausible inference that the representations on the registration statement would "mislead a reasonable investor" to believe that the registration *was* sufficient to permit exercise. *See City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 397 (S.D.N.Y. 2020).

Nor can that aspect of Count V be dismissed on the ground "that Alta's warrants are not traceable to the 2022 Form S-4" and are instead "traceable to the IPO Registration Statement," as Forge contends. *See* Def.'s Mem. 23. It is true that a Section 11 plaintiff must "plead and prove that [it] purchased shares traceable to the allegedly defective registration statement." *Slack Techs., LLC v. Pirani*, 598 U.S. 759, 770 (2023). But "[t]he pleading requirement for Section 11 standing is satisfied by general allegations that plaintiff purchased pursuant to or traceable to [a] false registration statement." *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 373 (S.D.N.Y. 2011) (quoting *Caiafa v. Sea Containers Ltd.*, 525 F. Supp. 2d 398, 407 (S.D.N.Y. 2007)); *see also id.* ("Although [defendants] assert that 'there is no set of facts under which Plaintiffs could trace the notes purchased' to the Supplemental Offerings, they supply no binding authority for the proposition that anything more is required to plead a Section 11 claim." (citations omitted)); *accord City of Omaha Police and Fire Ret. Sys.*, 450 F. Supp. 3d at 403 ("[Plaintiff] alleges that it purchased [defendant's] stock pursuant or traceable to the offerings. . . . This is enough to confer standing at this stage to assert a § 11 claim."). Alta alleges that it "purchased Public Warrants issued pursuant to or traceable to the Form S-4 registration statement." Compl. ¶ 137. That allegation suffices at this stage.

*In re CarLotz, Inc. Securities Litigation*, 667 F. Supp. 3d 71 (S.D.N.Y. 2023), upon which Forge relies, Def.'s Mem. 24, is not to the contrary. There, the court dismissed on the

15

ground that the traceability requirement was not satisfied because the plaintiff "admit[ted] that [he] did not purchase his [] shares pursuant to the S-4 registration statement being challenged — he purchased them *before* any securities were offered pursuant to the merger." *Id.* at 81. Forge is correct that the Amended Complaint "does not allege when Alta purchased its warrants." Def.'s Reply 9. But nor does the Amended Complaint "itself undermine[] traceability," as the pleadings did in *CarLotz*. *Id.* at 8. The Court therefore finds that Alta's "tracing allegation . . . suffices for the Section 11 claim[] at this stage of the litigation." *In re Wachovia Sec. Litig.*, 753 F. Supp. 2d at 373.[2]

In short, Count VI must be and is dismissed in its entirety.[3] By contrast, the motion to dismiss Count V is granted in part and denied in part. Specifically, the claim survives with respect to Alta's claim that the Form S-4 made false or misleading representations that it would register the Public Warrants "upon being deemed effective."

## CONCLUSION

For the foregoing reasons, Forge's partial motion to dismiss is GRANTED in part and DENIED in part. Specifically, Counts II, IV, and VI are dismissed in their entirety, while Count V is dismissed in part. Specifically, Count V survives only insofar as it alleges that the Form S-4 made false or misleading representations that the Form was effectively registering the Public

---

[2]     Alta contends in its memorandum of law that it "purchased the Warrants on the New York Stock Exchange under the symbol FRGE.WS" and that "Warrants, under this ticker, did not exist until Forge filed the Form S-4." Pl.'s Opp'n 19. It further asserts that it "purchased the Warrants after the Form S-4, which registered the Warrants, was deemed effective and after the de-SPAC transaction closed." *Id.* at 21. The Court cannot — and does not — consider these assertions here, as they do not appear in the Amended Complaint itself, but they do underscore the factual nature of the traceability issue.

[3]     In light of that conclusion, the Court need not and does not reach Defendant's alternative argument that the claim in Count VI is time barred. *See* Def.'s Mem. 24-25.

16

Warrants such that they would become exercisable thirty days after the close of the business combination. Counts I and III, which Forge did not seek to dismiss, also remain.

With respect to the dismissed claims, the Court declines to *sua sponte* grant Alta leave to amend. To be sure, leave to amend a pleading should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). But it is "within the sound discretion of the district court to grant or deny leave to amend," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007), and there are several reasons to exercise that discretion to deny leave here. First, the problems with Alta's dismissed claims are substantive, so amendment would be futile. *See, e.g.*, *Roundtree v. NYC*, No. 19-CV-2475 (JMF), 2021 WL 1667193, at *6 (S.D.N.Y. Apr. 28, 2021) (citing cases). Second, Alta does not request leave to amend or suggest that it is in possession of facts that would cure the problems with the dismissed claims. *See, e.g.*, *Clark v. Kitt*, No. 12-CV-8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014) ("A plaintiff need not be given leave to amend if [it] fails to specify how amendment would cure the pleading deficiencies in [its] complaint."); *accord TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505-06 (2d Cir. 2014). Finally, the Court granted Alta leave to amend its original complaint in response to Forge's first motion to dismiss, which raised the defects in the dismissed claims discussed above, and explicitly warned that Alta would "not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss." ECF No. 18. Alta's "failure to fix deficiencies in its previous pleadings is alone sufficient ground to deny leave to amend *sua sponte*." *Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.*, 936 F. Supp. 2d 376, 415 (S.D.N.Y. 2013) (citing cases).

Unless and until the Court orders otherwise, Forge shall file its Answer to the remaining claims within **two weeks** of the date of this Memorandum Opinion and Order. *See* Fed. R. Civ.

17

P. 12(a)(4)(A).  In addition, the initial pretrial conference previously adjourned, *see* ECF No. 18, is hereby reinstated and RESCHEDULED for **April 11, 2024, at 10:00 a.m.**  The conference will be held remotely in accordance with the Court's Individual Rules and Practices in Civil Cases, available at https://nysd.uscourts.gov/hon-jesse-m-furman.  The parties are reminded that, no later than the **Thursday before the initial pretrial conference**, they are required to submit a joint status letter and proposed Case Management Plan.  *See* ECF No. 7.

The Clerk of Court is directed to terminate ECF No. 22.

SO ORDERED.

Dated: March 13, 2024
       New York, New York

_____
JESSE M. FURMAN
United States District Judge